United States District Court
Southern District of Texas
**ENTERED**
April 04, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| PAMELA DENISE SAMUELS, § § Plaintiff. § § V. § § KILOLO KIJAKAZI, *Acting Commissioner of Social Security Administration,* § § § § § Defendant. § | CIVIL ACTION NO. 3:22-cv-00198 |

## OPINION AND ORDER

Plaintiff Pamela Denise Samuels ("Samuels") seeks judicial review of an administrative decision denying her applications for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Samuels and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 13, 16.[1] After reviewing the briefing, the record, and the applicable law, Samuels's motion for summary judgment is **DENIED**, and the Commissioner's motion for summary judgment is **GRANTED**.

## BACKGROUND

Samuels filed an application for disability insurance benefits under Title II on February 13, 2019, alleging disability beginning on July 9, 2018. Her applications were denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Samuels was

---

[1] "Notwithstanding the absence of any express cross-motion for summary judgment by the Commissioner, [I] will construe the Commissioner's brief as including such a cross-motion in light of the fact that the Commissioner's brief requests only that the ALJ's decision be affirmed." *Roe v. Colvin*, No. 2:13-CV-02265, 2014 WL 7239458, at *1 n.1 (E.D. Cal. Dec. 17, 2014); *see also* Dkt. 16 at 17 ("Because substantial evidence and proper legal standards support her final decision finding Plaintiff not disabled, the Commissioner respectfully requests the Court to affirm that decision.").

not disabled. Samuels filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Samuels had "engaged in substantial gainful activity during . . . April 2020 to September 2020." Dkt. 9-3 at 20. Nevertheless, the ALJ found that "there ha[d] been a continuous 12-month period(s) during which [Samuels] did not engage in substantial gainful activity." *Id.*

The ALJ found at Step 2 that Samuels suffered from "the following severe impairments: degenerative joint disease of the left shoulder, degenerative disc disease, depressive disorder, and anxiety disorder." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Samuels's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and or walk with normal breaks for a total of about six hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight hour workday; push and or pull within those stated exertional limitations, except, regarding postural limitations, can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; but can never climb ladders, ropes, and scaffolds. Regarding manipulative limitations, is limited to occasional overhead reaching with the left upper extremity. There are no established visual and communicative limitations. Regarding environmental limitations, is unable to

3

> perform work at unprotected heights. Regarding mental limitations, can understand, remember, and carry out simple 1, 2, and 3 step instructions and detailed instructions, but not complex instructions; make decisions; attend and concentrate for extended periods; accept instructions; and respond appropriately to changes in a routine work setting; is unable to perform work with strict production quotas; and is unable to perform work at an assembly line pace.

*Id.* at 23.

At Step 4, the ALJ found that Samuels is unable to perform any past relevant work. *See id.* at 28. Nonetheless, the ALJ elicited testimony from a vocational expert ("VE") that "there are jobs that exist in significant numbers in the national economy that [Samuels] can perform." *Id.* at 29. The VE identified the following occupations as ones that Samuels could perform: photocopy machine operator, non-postal mail clerk, and laundry classifier. *See id.* at 30. Based on the Medical-Vocational Guidelines, the ALJ explained that Samuels is not disabled. *See id.* at 29–30.

## DISCUSSION

This social security appeal raises only one issue: whether the ALJ's RFC analysis is supported by substantial evidence. Samuels argues that the ALJ "failed to properly evaluate the [April 28, 2021] medical opinion from the only examining source, Dr. Farzana Sahi." Dkt. 14 at 4. Samuels specifically takes issue with the fact that the ALJ did not provide "*any* explanation as to why she rejected Dr. Sahi's assessed manipulative limitations." *Id.* The manipulative limitations that Dr. Sahi assessed were: "lift/carry up to 10 pounds occasionally, but never more" and only "occasionally reach, handle, finger, feel, and push/pull with the left and right hands." *Id.* at 4–5 (citing Dkt. 9-22 at 53). Samuels contends that because Dr. Sahi's opinion is supported by other evidence in the record—namely, two designated doctor examinations from 2019 that were conducted at the behest of the Texas Department of Insurance, Division of Workers Compensation—it was error for the ALJ to reject it. Moreover, Samuels argues that the ALJ's rejection of Dr. Sahi's medical opinion "cannot be deemed harmless [error] because the three

4

jobs relied upon at step 5 require frequent reaching and handling, which would be precluded if Dr. Sahi's manipulative limitations had been credited." *Id.* at 4. Samuels also argues that the ALJ erred in relying on the medical opinion of Dr. Albert Oguejiofor becauseCed Dr. Oguejiofor "failed to review all relevant medical evidence in the record, including [the two 2019 designated doctor examinations]." *Id.* I have reviewed the record, including the hearing transcript and the ALJ's decision. I find that the ALJ properly evaluated the medical opinions of both Drs. Sahi and Oguejiofor, and that her decision is supported by substantial evidence.

Because Samuels filed for benefits "on or after March 27, 2017," the ALJ was required to apply the new regulations. 20 C.F.R. §§ 404.1520c, 416.920c. Through the new regulations, the Commissioner revised the standards and procedures for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. As such, "ALJs are no longer required to give controlling weight to the opinions of treating physicians." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (quotation omitted). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. *See* 20 C.F.R. § 404.1520c(a). In evaluating persuasiveness, the ALJ considers five factors: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. *Id.* § 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. *See id.* § 404.1520c(b)(2).

With respect to "supportability," "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, No. 1:20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). "As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20

5

C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)). "Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (quotation omitted). Reviewing the record with these principles in mind, it is clear to me why the ALJ made the decision she did, and that such decision is supported by substantial evidence.

### A. THE ALJ PROPERLY EVALUATED DR. SAHI'S OPINION

After reviewing the record of Samuel's consultative examination with Dr. Sahi, the ALJ made the following assessment:

> The undersigned considered this evidence and found it not persuasive; the evidence supports that the claimant was able to lift and/or carry up to 20 pounds as she was right hand dominant, and she was able to lift up to 10 pounds on the left. The opinion indicated that she was limited to standing and/or walking 30 minutes each in total; however, her gait was normal. She was unable to walk on heels and toes, but her straight leg was negative. There was no support for such a limitation. This limitation was not consistent with the other substantial evidence of record.

Dkt. 9-3 at 25. Samuels argues that "to the extent this rationale can be considered an 'explanation' at all, that explanation only relates in any precise way to the ALJ's finding that Plaintiff can stand/walk consistent with the requirements of light work." Dkt. 14 at 15. Samuels also argues that the "ALJ's rationale creates an internal inconsistency between the RFC and the ALJ's explanation" because "the ALJ's analysis implies that [the ALJ] accepted that [Samuels] was *only* able to lift up to 10 pounds on the left," whereas the RFC states that Samuels can "lift and/or

6

carry 20 pounds occasionally and 10 pounds frequently." *Id.* (quotation omitted). As to the latter of these points, I agree with the Commissioner that there is no inconsistency: "an ability to lift up to 10 pounds on the left *alone* is fully consistent with the ALJ's finding that [Samuels] could frequently lift 10 pounds bilaterally." Dkt. 16 at 10. As to the former of Samuels's arguments—that the ALJ's rationale only deals with standing/walking—Samuels overlooks all the *other* reasons the ALJ gave for crafting the RFC the way she did:

> The undersigned finds that [Samuels] is able to spend a substantial part of the day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. According to [Samuels]'s Function Report, among other things, [Samuels] is able to handle her personal care without the assistance, cook, perform household chores, go outside on a regular basis, shop, attend church on a regular basis, count change, handle [her] financial affairs, and interact with others. Therefore, the undersigned finds that [Samuels]'s impairments do not preclude the ability to perform work-related activities.
>
> . . .[Samuels] has not generally received the type of medical treatment one would expect for a totally disabled individual. Although [Samuels] has received some treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature. [Samuels] has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in [her] favor, but the medical records reveal that the medications have been relatively effective in controlling [Samuels]'s symptoms.

Dkt. 9-3 at 28. "There is simply no requirement under the new rule that the ALJ address each specific opinion when a single physician provides multiple opinions." *Teixeira v. Comm'r, SSA*, No. 4:21-cv-00003, 2022 WL 3130859, at *8 (E.D. Tex. July 12, 2022). What matters is whether "the ALJ addressed both the supportability and consistency of the opinion *at the source-level.*" *Id.* Here, the ALJ addressed both. *See* Dkt. 9-3 at 25.

Furthermore, "the ALJ's assessment and articulation of consistency and supportability must be read in full context of the RFC findings," not in isolation. *Teixiera*, 2022 WL 3130859, at *9 n.15. Reading the ALJ's decision as a whole, I have no trouble discerning the ALJ's logic in crafting Samuels's RFC the way she

7

did. The ALJ considered Dr. Sahi's opinion and rejected it, finding it unpersuasive due to its own internal inconsistency (e.g., limiting Samuels to only 30 minutes of standing or walking despite a normal gait and negative straight leg raise test), as well as its inconsistency "with the other substantial evidence of record" (Dkt. 9-3 at 25), like Samuels's daily "pursuits involving the performance of physical functions that are transferable to a work setting" and her "essentially routine and/or conservative" medical treatment. *Id.* at 28. It does not matter if I agree with the ALJ or if I would have crafted a different RFC. What matters is whether the ALJ's decision is supported by the record, and I find that it is.

**B.    THE ALJ PROPERLY EVALUATED DR. OGUEJIOFOR'S OPINION**

As for Dr. Oguejiofor's medical opinion, which the ALJ found persuasive, Samuels argues that the ALJ failed to account for the divergence of Dr. Sahi's and Dr. Oguejiofor's opinions "on an outcome determinable question: additional manipulative limitations, where Dr. Oguejiofor failed to review the [2019 designated doctor examinations]." Dkt. 14 at 20. First, Samuels cites to no law or regulation—nor am I aware of any—that requires *a medical examiner* to have reviewed workers' compensation designated doctor examinations. Second, there is no indication that Dr. Sahi reviewed the designated doctor examinations either. *See* Dkt. 9-22 at 45–57; *see also* Dkt. 9-5 at 39–41 (discussing whether Dr. Sahi "specifically addresses the start date" of her opinion, which neither the ALJ, nor Dr. Oguejiofor, nor Samuels's attorney could discern). What matters is whether *the ALJ* reviewed all of the evidence, which she clearly did. *See* Dkt. 9-3 at 17 (The ALJ "carefully considered the evidence of record in its entirety," which consisted of "exhibits 1A through 21F."). But because the designated doctor examinations are only medical *evidence*, not medical *opinions*, the ALJ was not required to specifically address either of them. *Compare* 20 C.F.R. § 404.1513(a)(3) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment

prescribed with response, or prognosis."), *with id.* § 404.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities . . . ."). *See also id.* § 404.1520c (the framework for articulating persuasiveness applies only to medical opinions and prior administrative findings). I will assume, *arguendo*, that the designated doctor examinations support Dr. Sahi's opinion and are thus contrary to the ALJ's RFC. That is of no moment. Some contrary evidence in the record does not equate to a finding of no substantial evidence. The Fifth Circuit has repeatedly held that "'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Here, Dr. Oguejiofor's opinion, Samuels's relatively conservative treatment, her daily pursuits, and recent medical evidence showing improvement from physical therapy (*see* Dkt. 9-3 at 24) all make the ALJ's RFC credible.

Lastly, Samuels argues that "[t]he inadequacy of the ALJ's explanation is also shown by its one-sided nature." Dkt. 14 at 21. Samuels implies that because Dr. Oguejiofor and Dr. Samuels are both internists with "knowledge with the Social Security Act and SSA's disability requirements," that the ALJ should have found their opinions equally persuasive. *Id.*; *see also id.* at 6 ("*Critically under SSA's new rule[,] multiple opinions, even opinions at odds with each other in their conclusions, can be found equally persuasive.*"). But Samuels overlooks the most important fact regarding Dr. Oguejiofor's opinion that distinguishes it from Dr. Sahi's opinion: Dr. Oguejiofor "specifically reference[d]" how his opinion "was supported by the record" during his testimony. Dkt. 9-3 at 28. This is important because Dr. Sahi's opinion does not reference *any* record evidence other than her own, one-time examination of Samuels. *See* Dkt. 9-22 at 45–57. Indeed, the ALJ, Dr. Oguejiofor, and even Samuels's attorney struggled during the hearing to ascertain the timeframe to which Dr. Sahi's opinion should apply for this very

reason. *See* Dkt. 9-5 at 39–41. Thus, it was not error for the ALJ to find Dr. Oguejiofor's opinion persuasive while finding Dr. Sahi's opinion unpersuasive.[2]

\* \* \*

For all these reasons, I find that the ALJ's decision was supported by substantial evidence.

## CONCLUSION

Samuels's motion for summary judgment (Dkt. 13) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 16) is **GRANTED**. I will enter a Final Judgment separately.

SIGNED this 2nd day of April 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[2] Because the ALJ did not find Dr. Sahi's opinion persuasive, the ALJ was not confronted with "[e]qually persuasive medical opinions," and thus was not required to "articulate how [she] considered the other most persuasive factors." 20 C.F.R. § 404.1520c(b)(3).